UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RPC Acquisition Corp.,                                Civil No. 13-1400 (DWF/LIB)

             Plaintiff,

v.                                          **ORDER ON PLAINTIFF'S MOTION**
                                                    **FOR PRELIMINARY INJUNCTION**

J&D World Corp., Tyler Huynh, and
Nghia Trinh Huynh,

             Defendants.

The above-entitled matter came before the undersigned on the motion of Plaintiff RPC Acquisition Corp. ("RPC") for a Preliminary Injunction. Appearances by counsel were as noted.

Based upon the arguments of counsel, the memoranda of law in support and opposition, the declarations and supporting documents filed therewith and the entire file herein, the Court makes the following:

**FINDINGS OF FACT**

1.       Under RPC's distinctive model, the brand positioning for PRO-CUTS salons is to be community-aware and connected – one that is rooted in the neighborhood. The PRO-CUTS Marks, trade dress, and Business System, is geared to project an image that has a neighborhood atmosphere and is friendly, relatable, approachable, clean, and honest. The facilities have a consistent look and feel, as well. RPC trains its franchisees on this model; franchisees are given trademark licenses to operate their business in compliance with this model. Over the years, RPC and franchisees have built up

considerable goodwill in the PRO-CUTS Marks. A franchisee who pays for the right to operate under the PRO-CUTS marks benefits from that goodwill.

2.  Defendant J&D World Corp. ("J&D") signed five franchise agreements with RPC for PRO-CUTS salons in the Dallas-Fort Worth metropolitan area. J&D's owners, Tyler Huynh and Nghia Trinh Huynh, are personal guarantors of each one of the five franchise agreements.

3.  J&D's franchise agreements were validly terminated by Plaintiff after Plaintiff discovered that Defendants were diverting products out of franchise locations and failing to pay amounts due under the contracts. In further violation of the franchise agreements, Defendants refused to allow Plaintiff access to Defendants' books and records.

4.  The confidentiality provisions in the franchise agreements allow for the communication and transmission of confidential and trade secret materials to franchisees, and require the franchisees to protect that information. Defendants agreed that they:

> will not, during the term of this [Franchise]Agreement or thereafter, communicate, divulge or use for the benefit of any other person or entity any confidential information, knowledge or know-how concerning the methods of operation of a Pro-Cuts business which may be communicated to the FRANCHISEE . . . by virtue of this Agreement.

and they further agreed to limit access to such confidential information to employees with a need to know the information.

5.  The non-competition provisions in the franchise agreements protect RPC's goodwill and confidential information by preventing terminated franchisees from being involved in competing enterprises for two years after termination, and within 6 miles of

any RPC franchise location. Pursuant to Article 12.3 of the Franchise Agreements, Defendants agreed that they would not,

> [F]or a period of two (2) years after the termination or expiration of this [Franchise] Agreement, on their own account or as an employee, agent, consultant, partner, member, officer, director or shareholder:
>
> > (A)  seek to employ any person who is at that time employed by [RPC] or by any other Pro-Cuts® franchisee or Regis business, or induce any such employee to terminate his or her employment or
> >
> > (B)  own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any hairstyling, barber or other business that is in any way competitive or similar to the Pro-Cuts businesses conducted by [RPC] or [RPC's] franchisees, which is located within six (6) miles of either the Franchised Location or of PRO-CUTS' franchisees. . . .

6.  The franchise agreements also provide that upon termination, the franchisee must stop using all RPC confidential information and trademarks. Pursuant to Article 11.2 of the franchise agreements, Defendants agreed that "[u]pon expiration or termination of this Agreement for any reason, the FRANCHISEE's right to use the name Pro-Cuts®, the other Marks and the Business System will terminate immediately."

7.  Pursuant to Article 11.4, Defendants agreed that, upon termination or expiration of the Franchise Agreements, they would immediately notify the telephone company or any other applicable local carrier of the termination or expiration of Defendants' rights to use all telephone numbers and all classified and other directory listings for the Franchisee's PRO-CUTS Business.

8. Pursuant to the provisions of the franchise agreements, Defendants were given copies of and access to many confidential materials related to PRO-CUTS. Specifically, Defendants have been provided with RPC's operations manuals, pricing information, product knowledge education, marketing strategies and information on upcoming marketing campaigns, and other information that is not publicly available and is kept confidential.

9. Defendants are continuing to operate hair salons in four of their former franchise locations in violation of the post-term covenants not to compete. Defendants further continue to use PRO-CUTS Marks and materials in violation of the franchise agreements.

10. Pursuant to Article 18.3 of the Franchise Agreements, Defendants agreed to "pay all costs and expenses, including attorneys' fees, actually incurred by [RPC] in enforcing any term, condition or provision of this Agreement or in seeking to enjoin any violation of this Agreement by the FRANCHISEE."

11. Pursuant to Article 24.1 of the Franchise Agreements, RPC has "the right to petition a Court of competent jurisdiction for the entry of temporary and permanent injunctions and orders" related to:

- The "FRANCHISEE'S improper and unauthorized use of the Marks and the Business System";
- "[T]he obligations of the FRANCHISEE upon termination or expiration of this [Franchise] Agreement[s]";
- "[T]he FRANCHISEE'S violation of the provisions of this [Franchise] Agreement[s] relating to confidentiality and covenants not to compete."

Where RPC prevails on any action brought under Article 24, J&D is required to indemnify RPC for its costs, including attorneys' fees. Under this provision, Defendants further agreed that RPC is entitled to injunctive relief without posting a bond.

12. That any conclusion of law which is deemed a finding of fact is deemed incorporated herein as such.

Based upon the above findings of fact, the Court now makes its:

## CONCLUSIONS OF LAW

1. Plaintiff meets the standard for issuance of a preliminary injunction.

2. Plaintiff has a substantial likelihood of succeeding on the merits. Plaintiff has a substantial likelihood of succeeding in showing that Defendants are infringing on the PRO-CUTS Marks by holding over and continuing to use Plaintiff's marks without a license.

3. Plaintiff has a substantial likelihood of succeeding in showing that Defendants entered into an enforceable agreement not to compete with Plaintiff. Through the declaration of Patricia Kessler, Plaintiffs have established that the post-term covenants not to compete protect legitimate business interests such as confidential information and goodwill.

4. Plaintiff has a substantial likelihood of succeeding in showing that the duration of the post-term covenants not to compete is reasonable. Based on Defendants' refusal to return confidential information and Plaintiff's years of experience in franchising, this harm is not speculative.

5. Plaintiff has a substantial likelihood of succeeding in showing that the geographic scope of the post-term covenants not to compete is reasonable.

6. In sum, Plaintiff has a substantial likelihood of succeeding in showing that the post-term covenants not to compete are necessary to protect Plaintiff's good will and confidential information. It is not injurious to the public. And it is no broader than necessary for the protection of Plaintiff's legitimate business interests. Thus, Plaintiff is likely to prevail on the merits.

7. Plaintiff has demonstrated that it will be irreparably harmed by Defendants' actions, particularly in terms of the goodwill in the PRO-CUTS brand, and the potential and inevitable use of their confidential information.

8. Continued operation of Defendants' businesses will irreparably harm Plaintiffs in the following ways:

- Goodwill in the PRO-CUTS brand will be damaged.
- Plaintiffs' confidential information will be used to undermine and unfairly compete with PRO-CUTS franchisees.
- Other franchisees may be emboldened to breach their franchise agreements.

9. The balance of hardship weighs in favor of Plaintiff. As noted above, Plaintiffs will be irreparably damaged if a preliminary injunction does not issue. In contrast, Defendants will only be enjoined from continued breaches of their contractual obligations.

10. Finally, a preliminary injunction is consistent with the strong public policy of protecting parties' right to contract, protecting valid trademarks, and protecting a company's confidential information and customer goodwill.

11. That any finding of fact which is deemed a conclusion of law is incorporated herein as such.

Based upon the above findings of fact and conclusions of law, the Court hereby enters the following:

## ORDER

1. Plaintiff RPC Acquisition Corp.'s Amended Motion for Expedited Preliminary Injunction (Doc. No. [17]) is **GRANTED**.

2. Until otherwise ordered by the Court, Defendants J&D World Corp., Tyler Huynh, Nghia Trinh Huynh, and anyone acting in concert with them are preliminarily enjoined from directly or indirectly:

   a. Using Plaintiff's trademarks, including but not limited to Plaintiff's registered trademarks and trade dress;

   b. Operating the five salons subject to the five franchise agreements between the Parties;

   c. Owning, operating, leasing, franchising, conducting, engaging in, or being connected with any person or entity engaged in hairstyling, barber or other business that is in any way competitive or similar to the PRO-CUTS® business conducted by RPC and RPC's franchisees, for a period of two years from today's date and within six miles of:

      i. The five locations formerly subject to the franchise agreements; and

      ii. Any RPC PRO-CUTS® franchisee.

     d.     Using or retaining the right to use the telephone numbers and listings associated with the five formerly franchised locations operated by Defendants;

     e.     Using or retaining any of Plaintiffs' confidential information, including but not limited to RPC's operation manuals;

     f.     Using or retaining any promotional, advertising, or other materials bearing RPC trademarks or service marks.

3. Defendants are further ordered to immediately:

     a.     Return any of Plaintiff's confidential information, including but not limited to its operations manuals;

     b.     Return any promotional, advertising, or other materials bearing RPC's trademarks or services marks;

     c.     De-identify all five former PRO-CUTS franchises operated by Defendants. This includes, but is not limited to: repainting the interior walls with totally different colors, and removing distinctive designs from the walls; removing and replacing fixtures and other décor with items not of the general type and appearance used in PRO-CUTS Businesses; removing all interior and exterior PRO-CUTS signs; immediately discontinuing the use of approved wall décor items and window decals; and refraining from using any names, slogans, or other items which may be confusingly similar to those used only PRO-CUTS businesses;

     d.     Transfer to Plaintiff the telephone numbers and listings formerly used by the PRO-CUTS® franchised locations operated by Defendants.

If the actions listed in this paragraph are not completed and verified within 5 business days, Plaintiff may file a declaration detailing any actions that have not been performed and Defendants shall be required to show cause why a contempt order should not issue.

4. Plaintiff shall be afforded its reasonable attorneys' fees, costs and disbursements in bringing this action. Plaintiff's attorneys are directed to submit a

8

proposed order and an affidavit of their reasonable attorneys' fees, costs and disbursements in connection with obtaining a specific award of fees, costs and disbursements incurred to date. However, nothing in this Order shall be construed to limit this award to those fees, costs and disbursements incurred solely in connection with Plaintiff's Motion for Preliminary Injunction.

    5.    By agreement of the parties, no bond is required.

Dated: July 2, 2013          s/Donovan W. Frank
                                      DONOVAN W. FRANK
              `                  United States District Judge